UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERIK SEVERINGHAUS, ) | |
| ) | |
| Plaintiff, ) | No. 1:22-CV-00170 |
| ) | |
| v. ) | |
| ) | Judge Edmond E. Chang |
| DOCUSIGN, INC. ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Erik Severinghaus brought this action against his former employer, DocuSign, Inc., alleging violations of the Family and Medical Leave Act (FMLA), Title VII of the Civil Rights Act of 1964 (Title VII), and the Illinois Human Rights Act.[1] R. 1, Compl. ¶¶ 1–2.[2] DocuSign now moves to dismiss for improper venue under Civil Rule 12(b)(3), or alternatively, to transfer the case pursuant to a forum-selection clause and the doctrine of *forum non conveniens* under 28 U.S.C. § 1404(a). Specifically, DocuSign contends that the parties agreed to arbitrate employment claims in King County, Washington.[3] R. 9, Def.'s Mot. at 1–2. In response, Severinghaus argues that he should not be forced to arbitrate because the arbitration agreement requires Severinghaus to (1) arbitrate this dispute in Washington state, which has no connection to this case; (2) pay his own attorney's fees and costs regardless of outcome,

---

[1] The Court has federal-question jurisdiction over the federal law claims and supplemental jurisdiction over the related state law claim. 28 U.S.C. §§ 1331, 1367(a).

[2] Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

[3] DocuSign has offered to arbitrate in Chicago, Illinois to reduce Severinghaus's financial burden associated with arbitrating in the State of Washington. R. 16, Def.'s Reply at 4.

1

Case: 1:22-cv-00170 Document #: 42 Filed: 03/28/24 Page 2 of 16 PageID #:361

contravening the fee-shifting provisions in Title VII, the FMLA, and the IHRA; and (3) pay half of the costs and expenses of the arbitration, overriding the default American Arbitration Association (AAA) rules. R. 11, Pl.'s Resp. at 1–2. For the reasons explained in this Opinion, the case is dismissed without prejudice: the case must be arbitrated. But the arbitration-agreement provision that prohibits an award of attorney's fees if Severinghaus prevails is severed and is unenforceable.

## I. Background

In evaluating a motion to dismiss for improper venue, the Court "takes all the allegations in the complaint as true unless contradicted by the defendant's affidavit and may examine facts outside the complaint." *Interlease Aviation Inv'rs II (Aloha) L.L.C. v. Vanguard Airlines, Inc.*, 262 F. Supp. 2d 898, 913 (N.D. Ill. 2003) (cleaned up). The Court also "constru[es] all facts and draw[s] reasonable inferences in favor of the plaintiff." *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 806 (7th Cir. 2011).

Severinghaus was previously employed by DocuSign as Senior Director of Business Development in Chicago, Illinois. Compl. ¶ 5. Severinghaus began working for DocuSign in September 2018, when DocuSign acquired his then-current employer, SpringCM. *Id.* ¶ 7. In August 2018, as a condition of employment with DocuSign, Severinghaus executed an employment agreement entitled "Confidential Information, Invention Assignment, Non-Competition and Arbitration Agreement." Def.'s Mot. at 1; R. 9-1, Exh. A, Shinkfield Decl. ¶¶ 6–7. The arbitration provision requires the parties to submit (except for an irrelevant exception) "ALL DISPUTES RELATING TO

ALL ASPECTS OF THE EMPLOYER/EMPLOYEE RELATIONSHIP" to arbitration in King County, Washington. R. 9-1, Agr. §§ 11.1, 11.2 (attached as Exhibit 1 to Shinkfield Decl.) (capitalization in original). The arbitration provision further instructs, again in capital letters, that "ANY AND ALL CLAIMS FOR VIOLATION OF ANY FEDERAL, STATE[,] OR MUNICIPAL STATUTE, INCLUDING, BUT NOT LIMITED TO, TITLE VII OF THE CIVIL RIGHTS ACT ..." must be submitted to arbitration. *Id.* § 11.2(b) (capitalization in original).

According to the Complaint, Severinghaus enjoyed an excellent reputation at DocuSign for the quality of his work, as reflected in his employee reviews, which praised him for his engagement and leadership. Compl. ¶ 8. Severinghaus was routinely among the top performers based on assigned quantitative metrics. *Id*. But Severinghaus's relationship with DocuSign began to sour when he took his first parental leave between August 2019 and January 2020, after his first child was born. *Id.* ¶¶ 9–10. Chief Operating Officer Scott Olrich and Senior Vice President of Business Development & Channels Mark Register allegedly made negative comments towards Severinghaus, communicated their disappointment that he had taken parental leave, and wanted to punish him for taking parental leave. *Id.* ¶¶ 11–13. To Severinghaus, it appeared that the negativity directed at him stemmed from gender-based stereotypes that men are not the primary caregivers in their families. *Id*. Severinghaus contends that DocuSign took other adverse actions against him to punish him for taking paternity leave, such as: taking away his office, repeatedly criticizing him on leadership calls, and denying him additional restricted stock units that were

3

otherwise regularly awarded to top performers—while awarding restricted stock units to other employees who had not taken parental leave. *Id.* ¶ 13. Severinghaus raised his concerns to human resources and explained that he was subjected to hostility by his supervisor following his return from parental leave. *Id.* ¶ 14. After Severinghaus contacted human resources, his supervisor's hostility subsided and Severinghaus earned a favorable review in August 2020. *Id.* ¶ 15. But the circumstances of Severinghaus's employment again deteriorated after he announced on November 9, 2020, that he would again need to take parental leave in July 2021. *Id.* He was fired shortly thereafter, "within a matter of weeks." *Id.* DocuSign asserted that Severinghaus's role was eliminated due to restructuring, but also rejected Severinghaus's request for an internal transfer. *Id.* ¶¶ 16–17.

In this lawsuit, Severinghaus alleges six claims: (1) gender discrimination in violation of Title VII; (2) retaliation in violation of Title VII; (3) unlawful conduct in violation of the FMLA; (4) retaliation in violation of the FMLA; (5) gender discrimination in violation of the Illinois Human Rights Act; and (6) retaliation in violation of the Human Rights Act. *Id.* ¶¶ 29–50. In light of the arbitration agreement, DocuSign moves to dismiss the complaint under Civil Rule 12(b)(3), or alternatively, to transfer the case. Def.'s Mot. at 1. Severinghaus argues that the arbitration agreement that he signed is unenforceable because it compels him to (1) arbitrate this case in King County, Washington; (2) pay his own attorney's fees—even if he wins—in contravention of the fee-shifting provisions in Title VII, the FMLA, and the Human

4

Rights Act; and (3) pay one-half of the costs and expenses of the arbitration despite rules of the American Arbitration Association rules. Pl.'s Resp. at 1–2.

## II. Legal Standard

The Federal Arbitration Act provides that when arbitration is proper, a "court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Interpreting this provision, the Seventh Circuit has held that "where the arbitration agreement contains a forum selection clause, only the district court *in that forum* can issue a § 4 order compelling arbitration." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995). If an arbitration clause requires arbitration outside the district court's jurisdiction, then the proper procedural vehicle to enforce the arbitration clause is a motion under Civil Rule 12(b)(3), that is, a motion to dismiss for improper venue. *Faulkenberg*, 637 F.3d at 808. The ultimate issue is the same: "the central question in this case is the same whether we proceed under § 4 of the [Federal Arbitration Act] or Rule 12(b)(3): did the plaintiff[] agree to arbitrate the claims asserted in [his] complaint?" *Ferenc v. Brenner*, 927 F. Supp. 2d 537, 542 (N.D. Ill. 2013) (cleaned up). The Court thus must determine whether the arbitration agreement is valid and whether the parties' dispute falls within its scope.

When evaluating a Rule 12(b)(3) motion, "the district court is not obligated to limit its consideration to the pleadings or to convert the motion to one for summary judgment if the parties submit evidence outside the pleadings." *Faulkenberg*, 637 F.3d at 809–10 (cleaned up).

5

### III. Analysis

The Federal Arbitration Act instructs that a "written provision ... to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract ...." 9 U.S.C. § 2. Under the Act, if the parties entered into a valid arbitration agreement and the asserted claims in a lawsuit are within its scope, then the arbitration requirement must be enforced. 9 U.S.C. §§ 3–4; *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004) (citing *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir. 1999)).

Here, the arbitration agreement specifically states (in capital letters no less) that Severinghaus and DocuSign "AGREE THAT ANY DISPUTE OR CONTROVERSY ARISING OUT OF, RELATING TO, OR CONCERNING ANY INTERPRETATION, CONSTRUCTION, PREFORMANCE, OR BREACH OF THIS AGREEMENT, WILL BE SETTLED BY ARBITRATION TO BE HELD IN KING COUNTY, WASHINGTON" under the rules of the American Arbitration Association. Agr. § 11.1. The arbitration agreement covers employment claims, including "ANY AND ALL CLAIMS FOR VIOLATION OF ANY FEDERAL, STATE OR MUNICIPAL STATUTE, INCLUDING, BUT NOT LIMITED TO, TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 [and] THE CIVIL RIGHTS ACT OF 1991 ...." *Id.* § 11.2(b) (capitalization in original). The agreement's section on choice of forum, entitled "Governing Law and Consent to Personal Jurisdiction," further says that "I [the employee] expressly

6

consent to the personal jurisdiction of the state and federal courts located in King County, Washington" if DocuSign sues the employee. *Id.* § 12.1.

For the arbitration agreement to be enforced, the agreement must be valid and the claims at issue must be within the scope of the agreement. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). Whether a binding arbitration agreement exists is determined under principles of state contract law. *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 742 (7th Cir. 2010) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). On the burden of proof, "the party seeking to invalidate or oppose the arbitration agreement bears the burden of demonstrating that the arbitration agreement is unenforceable and that the claims are unsuitable for arbitration." *Paragon Micro, Inc. v. Bundy*, 22 F. Supp. 3d 880, 887 (N.D. Ill. 2014) (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000)).

Here, Severinghaus does not contest the actual formation of the contract, because he acknowledges that he signed the agreement as a condition of his employment with DocuSign.[4] Pl.'s Resp. at 4. Severinghaus also concedes that the claims in this lawsuit are all employment-related claims that come within the scope of the arbitration agreement. Instead, he challenges the enforceability of the arbitration

---

[4] Severinghaus asserts that he was "forced" to sign the agreement, Pl.'s Resp. at 4, but fails to offer an actual legal argument on this point in his response briefs. This undeveloped point on compulsion is thus forfeited. In any event, to the extent that Severinghaus is arguing that the agreement was procedurally unconscionable, that type of defense to an agreement usually requires "unfair surprise" of some kind, *Brne v. Inspired eLearning*, No. 17-CV-027122017 WL 4263995, at *6 (N.D. Ill. Sept. 26, 2017) (cleaned up). But Severinghaus offers no reason to think that happened here.

7

agreement altogether, arguing that three aspects of the arbitration provision render the arbitration agreement unenforceable. *Id.* at 5–6.

### A. Preclusion of Statutory Rights

First, Severinghaus contends that requiring the arbitration to be held in the state of Washington violates Title VII's special venue provision. Pl.'s Resp. at 5–6. Second, he argues that the arbitration agreement unlawfully purports to negate Title VII's fee-shifting provision for prevailing employees. *Id.* And third, Severinghaus argues that the agreement's requirement that Severinghaus pay for half of the total costs of conducting the arbitration is unenforceable. *Id.* These contentions are addressed in turn.

#### 1. Venue

Under Title VII's venue provision, a federal court action can be brought in any judicial district in which (a) the unlawful employment practice allegedly happened; (b) relevant employment records may be found; or (c) the plaintiff would have worked but for the discrimination. 42 U.S.C. § 2000e-5(f)(3). According to Severinghaus, convening the arbitration in Washington would "prevent him from effectively vindicating his statutory rights for four key reasons: (1) Plaintiff lives and worked in Chicago (he has never even been to Defendant's Washington location); (2) the discrimination and retaliation at issue took place in Chicago; (3) Defendant is headquartered in California; and (4) to the best of Plaintiff's knowledge no witness in this case lives or works in Washington." Pl.'s Resp. at 6–7. Severinghaus relies on *Luderus v. U.S. Helicopters, Inc.*, No. 12-CV-5094, 2013 WL 677814, at *4–5 (N.D. Ill. 2013), to explain the

8

significance of Title VII's venue provision. *Luderus* does not directly apply here because it did not address whether an arbitration agreement's forum-selection clause could override the venue provision; the employment agreement there did not call for arbitration. *Id*. at *2. In any event, all this is moot, because DocuSign has now agreed to arbitrate Severinghaus's claims in Chicago. R. 16, Def.'s Reply at 4. So the venue provision provides no basis to reject the arbitration agreement.

### 2. Attorney's Fees

Next, Severinghaus argues that the arbitration provision is unenforceable because it requires him to bear his own attorney's fees even if he prevails in the arbitration on the Title VII claim, despite the provision in Title VII that shifts fees in favor of prevailing parties. Pl.'s Resp. at 8. In response, DocuSign contends that individuals are generally free to surrender their rights to attorney's fees. Def.'s Reply at 8. For that proposition, DocuSign relies on *Metro E. Ctr. for Conditioning & Health v. Qwest Commun'ns Int'l, Inc.*, 294 F.3d 924, 929 (7th Cir. 2002), and *Carbajal v. H&R Block Tax Serv.*, 372 F.3d 903, 905 (7th Cir. 2004). But in *Metro East*, the question was whether to enforce an arbitration agreement contained in an interstate phone-service carrier's tariff, 294 F.3d at 925, a question which raised none of the concerns over depriving employees of attorney's fee-shifting when employees win employment-discrimination cases. Indeed, *Metro East* acknowledged that the opinion's entire discussion of attorney's fees was dictum. 294 F.3d at 929 (explaining "the decision is not ours to make" because the Federal Communications Commission would decide the legality of the provision). What's more, in assessing (though not deciding) whether

9

civil-rights fee-shifting could be waived, *Metro East* cited only cases in which the plaintiff waived attorney's fees in a *settlement* agreement (or a plea bargain) *after* the claim had arisen. *Id.* at 929 (citing *Evans v. Jeff D.*, 475 U.S. 717, 729–32 (1986) (holding that neither ethical rules nor 42 U.S.C. § 1988 prevented approval of a settlement in which the plaintiffs waived prevailing-party fees); and *Newton v. Rumery*, 480 U.S. 386, 397 (1987) (holding that a waiver of a false-arrest claim in exchange for dismissal of criminal charges is an enforceable agreement)). It is one thing to waive fees as part of a settlement of a claim *after* the claim has arisen; it is quite another to require an employee to waive fees for some unknown *future* claim prospectively.[5] Just as DocuSign could not require employees to generally waive employment-discrimination claims prospectively—before the claims even arise—so too DocuSign cannot require employees to prospectively waive their right to fee-shifting in employment cases.

This is consistent with the rationale in the concurring opinion of *McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 685 (7th Cir. 2001) (Rovner, J., concurring), a case cited by Severinghaus, Pl.'s Resp. at 9. The statutorily mandated right to attorney's fee-shifting "is integral to the purposes of" Title VII. *McCaskill*, 298 F.3d at 684–85 (Rovner, J., concurring). Although claims under Title VII of course may be subject to arbitration agreements, that is so only "as long as the litigant may effectively vindicate her statutory cause of action in the arbitral forum …." *Id.* at 684. Given the crucial role played by prevailing-party fee-shifting for Title VII claims, a prospective

---

[5] The reasons that *Metro East* does not foreclose Severinghaus's fees-shifting argument are the same reasons why *Carbajal* does not: *Carbajal* addressed the Fair Debt Collections Practices Act and held that the arbitrator should decide the issue. 372 F.3d at 906–07.

10

negation of Title VII's fee-shifting provision—in advance of the claim even arising—is akin to requiring a prospective waiver of the claim itself. *Id.* at 685 (explaining that fee-shifting is "a remedy that we have already recognized is essential to fulfill the remedial and deterrent functions of Title VII"); *Safranek v. Copart, Inc.*, 379 F. Supp. 2d 927, 930–34 (N.D. Ill. 2005).[6]

Having said that, a federal court need not void an arbitration provision in its entirety if an objectionable term can be severed. *See Safranek*, 379 F. Supp. at 935 (applying Illinois law). Severinghaus acknowledges that severance is a possibility, whether under Illinois or Washington law, Pl.'s Resp. at 13, but asks that the Court not exercise its discretion to do so. It is true, as Severinghaus argues, *id.* at 13–14, that if severance of unenforceable provisions were to become the routine practice, then employers might have an incentive to overreach in fashioning burdensome arbitration provisions, safe in the knowledge that severance is the backstop. But here the employer has conceded that it will not enforce the Washington venue provision and, as explained in this Opinion's next section, the cost-splitting provision is not unconscionable in the specific circumstances of this case. It would be one thing if DocuSign were asking for severance in a case against an entry-level employee with little bargaining power and who probably could not afford to hire an attorney to advise on the

---

[6] In its reply brief, DocuSign suggests—for the first time—that the arbitration provision specifically gives the arbitrator the power to "grant … other relief in a dispute or controversy," Def.'s Reply at 10, and the reference to "other relief" means that the arbitrator should get to decide whether attorney's fees are available. But not only was this argument raised too late (for the first time in the reply brief), the point explained in the Opinion's text is that the arbitration provision cannot—as a matter of law—take away Severinghaus's right to fee-shifting if he prevails in the arbitration.

11

enforceability (or not) of an arbitration provision. That is not this case. *See* R. 16-1, Shinkfield Decl. ¶ 4 (explaining that Severinghaus earned a $227,500 base salary with bonus opportunities). Given that the agreement itself contains a severability clause, Agr. § 12.3, and that the employer sought to enforce a single (though serious) unconscionable provision, the Court severs the provision that provides that each side will bear its own "counsel fees and expenses," Agr. § 11.1, no matter who wins. If Severinghaus prevails in the arbitration on any claim, then he will be entitled to reasonable attorney's fees and expenses on that claim.

### 3. Costs of Arbitration

Third and finally, Severinghaus argues that the arbitration provision requiring him to pay one-half of the arbitration costs is unconscionable because it is inconsistent with the American Arbitration Association's rules, which are otherwise adopted by the agreement. Pl.'s Resp. at 11; Agr. § 11.1. The parties here expressly agreed to split arbitration costs equally, which overrides the default provision in the AAA rules. *Bahoor v. Varonis Systems, Inc.*, 152 F. Supp. 3d 1091, 1100 (N.D. Ill. 2015).

So the cost-splitting provision is operative. That does not, however, end the inquiry, because the Supreme Court has recognized that "the existence of large arbitration costs could preclude a litigant ... from effectively vindicating her federal statutory rights in the arbitral forum." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 81 (2000). This makes sense: if as a practical matter the unaffordability of arbitration costs would render the arbitration unavailable, then the arbitration

12

agreement is not so much an alternative-dispute mechanism as it is an unconscionable prospective waiver of claims. The burden on the question of affordability is on the opponent of arbitration: "a party seek[ing] to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive ... bears the burden of showing the likelihood of incurring such costs." *Id*. at 92. The Supreme Court "did not state how detailed that showing must be," *Livingston v. Associates Fin., Inc.*, 339 F.3d 553, 557 (7th Cir. 2003), but the Supreme Court did say that that the mere "'risk' that [a plaintiff] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement," *Green Tree*, 531 U.S. at 91.

It is important too that the Seventh Circuit has interpreted *Green Tree* as requiring "the party opposing arbitration … [to] provide some *individualized* evidence that it likely will face prohibitive costs in the arbitration at issue and that *it is financially incapable* of meeting those costs." *Livingston*, 339 F.3d at 557 (emphases added); *James v. McDonald's Corp.*, 417 F.3d 672, 680 (7th Cir. 2005) (approvingly citing and quoting *Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549, 556 (4th Cir. 2001), and describing that case in a parenthetical as "applying a case-by-case analysis in the employment discrimination context focused on 'ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether the cost differential is so substantial as to deter the bringing of claims'"); *Brne v. Inspired eLearning*, No. 17-CV-02712, 2017 WL 4263995, at *3 (N.D. Ill. Sept. 26, 2017) (St. Eve, J.) (requiring individualized evidence that the plaintiff cannot afford the costs of arbitration). Courts applying Washington state law have

13

done the same. *Philpott v. Ernst & Young LLP*, No. C10-264RAJ, 2010 WL 11406230, at *7 (W.D. Wash. Dec. 29, 2010) (requiring the opponent of arbitration to present evidence of unaffordability, such as a "declaration describing her financial circumstance, or comparing the value of her claims with an estimated arbitration fee"); *Coppock v. Citigroup, Inc.*, No. C11-1984-JCC, 2013 WL 1192632, at *7 (W.D. Wash. Mar. 22, 2013) (similar).

Against this, Severinghaus maintains that there is no requirement for opponents of arbitration to present evidence of their individualized ability to afford arbitration costs, citing *Morgan v. Sundance, Inc.*, 596 U.S. 411, 416–17 (2022). R.17-1, Pl.'s Suppl. at 5. But this reliance on *Morgan* is misplaced. In *Morgan*, the question was whether a company had waived its right to invoke an arbitration agreement by participating—full force with pleadings and motion practice—in district-court litigation for eight months without raising the arbitration agreement. *Id.* at 416. The appellate court concluded that there was no waiver, because the company's opponent had not suffered any prejudice. *Id.* The Supreme Court reversed, holding that federal courts do not usually require a showing of prejudice to enforce a waiver, so the appellate court had incorrectly created an arbitration-specific rule to the general approach to waiver. *Id.* at 416–17.

None of that is relevant to Severinghaus's case. To assess whether a contractual provision on cost splitting is so one-sided or harsh that it is unconscionable, it should come as no surprise that the financial burden that it places on one side or the other is relevant. This assessment of affordability arises not from the *arbitral* nature

14

of the dispute, but rather from the fact that the dispute arises out of a *cost-splitting* provision. If, for example, an insurance policy required insureds to split the costs of property-damage experts in coverage lawsuits, then the assessment of unconscionability of that provision would take into account the insureds' ability to pay. Whether the insured is an individual homeowner or a nationwide commercial office-space company would be considered. No arbitration-specific variant of a general rule is being applied here. And, in any event, binding Seventh Circuit precedent requires individualized evidence. *See Livingston*, 339 F.3d at 557; *James*, 417 F.3d at 680.

Here, Severinghaus offers evidence of the potential cost of arbitration, but does not offer evidence of his individualized ability to split those costs. He presents a declaration by his counsel in which counsel estimates that half of the total arbitration costs could run around $30,075. *See* R. 12, Weinstein Decl. ¶¶ 12–20.[7] But Severinghaus then fails to provide any evidence demonstrating that *Severinghaus* is incapable of paying those costs. He does not rebut DocuSign's assertion that he made a base salary of $227,500 at DocuSign, with bonus opportunities. Shinkfield Decl. ¶ 4.[8] Without any record evidence of his ability to afford the costs of arbitration, Severinghaus has failed to carry his burden. The cost-splitting provision stands.

---

[7] There is no need for discovery on the potential costs of arbitration, because even accepting Severinghaus's estimate, he failed to carry his burden to show that he himself could not afford the costs.

[8] The defense also asserts that Severinghaus found comparable employment immediately after his separation from the company, but that assertion was made in the reply brief rather than via exhibits or an affidavit, Def.'s Reply at 7 n.3. Severinghaus made no attempt to rebut the assertion, such as by seeking leave to file a sur-reply.

## IV. Conclusion

This dispute must be arbitrated, though without enforcement of the arbitration agreement that requires Severinghaus to bear his own attorney's fees even if he prevails. With that provision severed, this case is dismissed for improper venue under Civil Rule 12(b)(3).

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 28, 2024